7094

*EX PARTE* CITY OF ANDERSON, *IN RE* WAGENER & CO., v.
BROWN BROS.

1. POSSESSION BY LIFE TENANT AND REMAINDERMEN—NOTICE—RECORD-
   ING ACTS.—Possession of life tenant and possession of grantee of
   remainderman under unrecorded deed, record of mortgage by grantee
   of remainderman, do not constitute constructive or actual notice of
   an unrecorded deed by remainderman to the simple contract creditors
   of remainderman contracted prior to the amendment of 1898 to the
   recording acts.
   *Divided Court.*
2. APPEAL—HOMESTEAD.—Where the pleadings set up no claim of home-
   stead nor that the sheriff or judgment creditor is about to violate
   any homestead right and question was not considered on Circuit,
   this Court on appeal will not consider the question.
3. JUDGMENTS—LIENS—BANKRUPTCY.—A sale of a bankrupt's property
   under order of Court, not mentioning liens, on petition filed after
   lien of judgment attached, does not affect lien of judgment.
4. REHEARING refused.

Before GAGE, J., Anderson, July, 1907. Affirmed.

Petition by the City of Anderson *et al., in re* F. W.
Wagener & Co. against Brown Brothers. From Circuit
decree, Beulah Brown appeals.

*Messrs. Bonham* and *Watkins,* for appellant.

*Mr. Joseph H. Brown,* contra.

### STATEMENT OF FACTS.

This is an appeal from an order dissolving a temporary injunction against the sale of one-half interest in the tract of land containing twenty-seven acres, formerly belonging to G. Ernest Brown.

The facts are thus stated in the decree of his Honor, the Circuit Judge:

"F. W. Wagener & Co. secured a judgment against Brown Bros., 24th June, 1897, and were proceeding in June, 1907, to enforce the same by levy of execution against two parcels of land in or near the city of Anderson, which formerly appeared to be the property of Wm. D. J. Feaster and G. Ernest Brown, who made up the firm of Brown Brothers, merchants.

"Thereupon, certain persons, parties hereto, filed a petition in the Court, alleging that the land so sought to be sold was not subject to the Wagener judgment lien, was the property of the petitioners, and in no way liable to pay the Wagener judgment. Thereupon Wagener & Co. answered the petitioners, and thus the issues were made up, as if the action had been started by summons and complaint.

"Pending a trial of the issues, a consent order was made, by which the sale was enjoined until the issues could be determined.

"It is conceded on both sides, and it was so stated in the agreement, that the testimony has raised no issues of fact, and the cause involves practically only an application of the recording acts to the conceded facts of the case at bar. The documentary testimony, embracing deeds, agreements, receipts, and so forth, was taken by the master. Some of the witnesses testified, with the consent of counsel, by affi-

davit.   The plaintiffs, referred to as petitioners to enjoin
the sale, assumed the burden of actors in the trial.  *  *  *

"The second parcel of land I shall consider is that re-
ferred to in the pleadings and the testimony as to the
twenty-seven acre tract.   It, too, and more at the start,
belonged to John J. Brown, the father of Feaster and
Ernest.   He conveyed it to trustees for his wife, Georgi-
anna, during her lifetime, and at her death to her three chil-
dren, Wm. D., J. Feaster and G. Ernest Brown.   William
got partition of his part, and it is not in issue.   The bal-
ance of twenty-seven acres belonged in fee in remainder
to Feaster and Ernest, in equal shares.   In September,
1895, Feaster's one-half was sold by the sheriff to satisfy
a judgment debt due by him.   It was purchased by Mrs.
Beulah C. Brown, the wife of Feaster.   The counsel for
the Wageners admit that it is out of their reach.   The only
other matter then in issue is Ernest's share, which was one-
half of twenty-seven acres.   It was first sold by way of
mortgage or assignment, by Ernest to Feaster, 28th Febru-
ary, 1883; recorded 28th April, 1896.   Thereafter on 3d
June, 1887, it was conveyed by deed to Beulah, the wife of
Feaster, recorded 27th June, 1902.   Ernest owed Feaster
and Feaster owed Beulah; and thus the transfer was made
immediately to Beulah.   The testimony makes it all plain,
and reveals no vice, unless it be the menace of the record-
ing acts.   The subsequent devolutions of title are irrele-
vant.

"The answer of Wagener seemed to put in issue the good
faith of the Browns and their kin in these transactions, but
the testimony does not sustain these suggestions.   Indeed,
Colonel Brown in his argument expressly disclaimed the
charge of a fraudulent intent; his only contention was that
the Browns were guilty of wrong-doing to keep the Wag-
eners from collecting their debt, as I recall his words.

"In a nutshell, the Wageners contend that Beulah took
title June 3, 1887; that subsequent thereto, to-wit: in 1889,

1890, 1891, the Wageners became creditors and without notice of Buelah's deed, by record or otherwise, until its record in June, 1902, that as to them the deed cannot prevail. That must be so under the plain mandates of the statute, unless the testimony shows that the Wageners or their agents had other notice of the Beulah deed. I do not think that the testimony fixes such notice upon them.

"It is, however, contended by plaintiffs that in June, 1887, when Beulah took the deed, she went into actual possession, and that possession carried notice to the Wageners. This under the law as it was construed prior to the Act of 1888. I do not think the possession by Beulah was of such a character and long enough continued to carry notice to the Wageners. Furthermore, Georgianna had a life estate in the land which was only ended in 1902, and up to that time she was the one lawfully in possession.

"The plaintiffs, however, contend that Ernest Brown got a discharge in bankruptcy some time in 1904, and that such action bars Wagener's judgment. I do not concur in that view.

"I am of the opinion, therefore, that as to the six lots and one-half of the twenty-seven acre tract, the injunction must continue permanently; but as against Ernest Brown's one-half interest in the twenty-seven acre tract, it must be dissolved.

"It is so ordered."

The record contains the following statement:

"The sources of title to this twenty-seven acre lot are as follows: On the 23d of January, 1858, John J. Brown conveyed to Robert H. Hubbard and Elijah W. Brown a certain lot of land, situate in Anderson District of South Carolina, containing fifty-one and one-fourth acres, more or less, in trust for the special use and benefit of Mrs. Georgianna Brown, wife of John J. Brown, for and during the term of her natural life, and at her death, then in trust for the special use and benefit of the children of said Geor-

gianna Brown and John J. Brown. The trustees were given power to sell said property and reinvest upon the same trust. Said deed was recorded as of January 22, 1858. The said John J. Brown and Mrs. Georgianna Brown had only three children, to-wit: J. Feaster Brown, W. D. Brown, and G. Ernest Brown. In the year 1880, W. D. Brown, one of the remaindermen, asked that his portion of the land be conveyed to him in fee, in order that he might improve the same. Accordingly a division was made, by which eleven and one-half acres of the land nearest the courthouse was allotted to him, and at his suggestion the deed thereto made to his wife. Mrs. Lou F. Brown, the same being signed by Mrs. Georgianna Brown and all the remaindermen. In consideration of this deed, W. D. Brown conveyed his interest in the remaining forty-two acres to G. Ernest Brown and J. Feaster Brown. In 1883, G. Ernest Brown, on the 28th day of February, in consideration of $1,025.00, made an assignment of his interest to J. Feaster Brown. This assignment, however, was not recorded until April 28, 1896. In 1887, fourteen acres of said land was deeded to the city of Anderson, and the deed duly placed on record. On June 3, 1887, at the request of J. Feaster Brown, and in consideration of the aforesaid assignment, G. Ernest Brown deeded to Mrs. Beulah C. Brown, wife of J. Feaster Brown, all his interest in the remainder of said land, now designated as the twenty-seven acre tract. This deed, for the reasons stated in the testimony, was not placed on record until the year 1902. On the first Monday in September, 1895, the interest of J. Feaster Brown in said land was sold by the sheriff of Anderson county, under a judgment in favor of the Bank of Anderson, and was bought by Mrs. Beulah C. Brown. A deed to her was made on the 11th day of May, 1896, and placed on record at that time.

"At this time Mrs. Beulah C. Brown executed a mortgage upon said premises, which was at the same time

placed on record, and in which she claimed to be the owner of the premises. In 1904, Mrs. Beulah Brown sold the half interest in said premises to the appellant, Mrs. Eula M. Brown. In March, 1907, she sold the other half interest to Mrs. Eula M. Brown, executing the contract of sale, the deed to be executed later.

"All the members of the firm of Brown Bros. removed from Anderson and without the State of South Carolina prior to the awarding of the judgment in favor of Wagener & Co.."

OPINION.

The opinion in this case was filed October 3, 1908, but held up on petition for a rehearing until

January 18, 1909. The opinion of the Court was delivered by

MR. JUSTICE GARY (after stating the facts). There are no issues of fact, and under the agreement of counsel (as stated in the decree of his Honor, the Circuit Judge), the only question is, whether F. W. Wagener & Co. were creditors for value without notice under the recording acts.

In his decree the Circuit Judge gives his reasons why F. W. Wagener & Co. did not have notice as follows: "It is contended by plaintiffs that in June, 1887, when Beulah took the deed, she went into actual possession, and that possession carried notice to the Wageners. I do not think the possession by Beulah was of such a character and long enough continued to carry notice to the Wageners. Furthermore, Georgianna had a life estate in the land, which was only ended in 1902, and up to that time she was the one lawfully in possession."

In determining the question whether Wagener & Co. had notice, we desire to call special attention to the following facts: On the 28th day of February, 1883, G. Ernest

Brown, in consideration of $1,050.00, made an assignment of his interest to J. Feaster Brown, which was recorded on the 28th of April, 1896. In September, 1895, J. Feaster Brown's one-half interest was sold by the sheriff, under a judgment against him, and purchased by his wife, Beulah C. Brown, whose deed was recorded in 1896, at which time she executed a mortgage on the land, which was duly recorded, in which she claimed to be the owner of the premises. On 3d of June, 1887, G. Ernest Brown executed a deed of conveyance of his own one-half interest in the land to Beulah C. Brown, but which was not recorded until the 27th of June, 1902; it seems to be conceded, or, at least, the ruling of the Circuit Judge was made on the hypothesis that Beulah C. Brown, immediately after the execution of said deed of conveyance, entered into possession of the land.

This fact, taken in connection with the record of the assignment, showed that J. Feaster Brown occupied the position of a mortgagee in possession; and, taken in connection with the record of the mortgage, showed that Beulah C. Brown was exercising acts of ownership and was in possession, claiming the land as her own.

Two or more persons may be in possession at the same time; therefore, the fact that Georgianna Brown was also in possession did not dispense with the necessity on the part of Wagener & Co. to make inquiry as to the rights of J. Feaster Brown and Beulah C. Brown.

Wagener & Co. were not in a position to claim that they were subsequent creditors for value without notice until the judgment was rendered in their favor, in 1897, as the statute extending the provisions of the recording acts to simple contract creditors was not enacted until 1898. Eula M. Brown traced her title from Beulah C. Brown.

Under these circumstances, the only reasonable inference from the admitted facts is that there was enough to put Wagener & Co. upon inquiry, which if pursued with due

diligence would have led to knowledge of the title under which the appellant claimed.

Therefore, the Circuit Judge erred in ruling that the possession by Beulah was not long enough continued to carry notice to the Wageners, and that Georgianna Brown, the life tenant, up to the time of her death, was the only one lawfully in possession. *Daniel* v. *Hester*, 29 S. C., 147, 7 S. E., 65; *Ellis* v. *Young*, 31 S. C., 322, 9 S. E., 955.

The question of notice under the recording acts presents a legal issue. *Gregory* v. *Ducker*, 31 S. C., 141, 9 S. E., 780; *Hodges* v. *Kohn*, 67 S. C., 69, 45 S. E., 102.

Therefore, as there was error, the judgment should be reversed, and the case remanded to the Circuit Court for a new trial upon this issue.

MR. CHIEF JUSTICE POPE *concurs.*

MR. JUSTICE WOODS, *dissenting.* I am unable to concur in a reversal. The facts are sufficiently set out in the opinion of Mr. Justice Gary. The issue before the Circuit Court was one of legal title to the land in dispute, and the findings of fact on that issue made by the Circuit Judge are binding on this Court, unless they are entirely unsupported by evidence. *Johnson* v. *Jones*, 72 S. C., 270, 51 S. E., 805. The Circuit Judge says in his decree: "I do not think the possession by Beulah was of such a character and long enough continued to carry notice to the Wageners. Furthermore, Georgianna had a life estate in the land, which was only ended in 1902, and up to that time she was the one lawfully in possession."

Wagener's judgment against G. Ernest Brown was recovered in 1897, and Mrs. Georgianna Brown, the life tenant of the land, lived until 1902. Ernest Brown conveyed the one-half interest to Beulah C. Brown by deed, dated 3d June, 1887, but not recorded until 27th June, 1902; and there was evidence tending to show that at or about the same

time Mrs. Georgianna Brown, the mother of Ernest and Feaster Brown, who was the life tenant, surrendered the land to Beulah C. Brown. The question of law is whether the possession acquired by Beulah C. Brown put Wagener & Company on notice of her title before the entry of their judgment in 1897. If the issue were whether this transfer of the land and subsequent holding of possession of it by Beulah C. Brown was sufficient to charge a creditor or a purchaser of the life tenant with notice that the life tenant had parted with, and Beulah C. Brown had acquired, her interest, the following cases might be regarded conclusive that the possession was sufficient notice: *Sheorn* v. *Robinson*, 22 S. C., 32; *Graham* v. *Nesmith*, 24 S. C., 295; *Sweatman* v. *Edmunds*, 28 S. C., 63, 5 S. E., 165; *Daniel* v. *Hester*, 29 S. C., 149, 7 S. E., 65; *Ellis* v. *Young*, 31 S. C., 325, 9 S. E., 955.

But, according to the papers on record, neither Ernest Brown nor Feaster Brown had any right of possession until the death of their mother, and those dealing with Ernest and Feaster Brown cannot be held to be put on notice that they had parted with their remainder from the fact that another held a possession of which they had no legal control. Such possession was notice sufficient to put the public on inquiry as to whether the life tenant had parted with her interest, but not whether the remaindermen, who had no right of possession, had parted with their interest. While recognizing fully the authority of the cases above cited, the doctrine ought not to be extended to the case here presented. Assuming, therefore, that the Circuit Judge was bound to accept the evidence of the parties as to the change of possession to Beulah C. Brown, such a change of possession did not charge Wagener & Company with notice that the remaindermen had parted with their title.

The record of the mortgage given by Beulah C. Brown on the land was not constructive notice to creditors or pur-

chasers that the owners had parted with their title to her. I think the judgment should be affirmed.

The Court being evenly divided, the judgment of the Circuit Court is affirmed.

MR. JUSTICE JONES *concurs.*

January 18, 1908.  PER CURIAM.  The appellants have filed a petition for rehearing in this cause, alleging that in the preparation of the opinions rendered, this Court overlooked the claim of homestead in right of G. Ernest Brown, the judgment debtor; the discharge of G. Ernest Brown in the bankrupt court, and the laches of Wagener & Company in enforcing their judgment.  The Court did not understand that these matters were seriously relied upon at the argument, and hence they were not discussed in the opinions.  We think they are so free from any serious doubt that a reargument is quite unnecessary.  The petition does not allege any claim for homestead, and of course does not allege that either the sheriff or the judgment creditor is about to violate any homestead right.  The right to homestead not having been an issue in the pleadings, nor considered by the Circuit Court, this Court decided nothing with respect to it.

The discharge of G. Ernest Brown in bankruptcy did not affect the judgment lien of Wagener & Company on his interest in the land in dispute.  His petition was filed in 1904, long after the lien of the judgment attached.  Even if there had been a sale of G. Ernest Brown's interest in this land in the bankruptcy proceedings, it would not have affected the lien of the Wagener judgment; for an order of the bankrupt court directing a sale of the bankrupt's property, without mentioning liens, will be construed as only authorizing a sale subject to existing liens.  *In re Blumberg,* 94 Fed., 476; *In re Plateville F. & M. Co.,* 147 Fed., 828; *Thompson* v. *Fairbanks,* 196 U. S.,

516; *Humphrey* v. *Tatman,* 198 U. S., 91; Brandenburg on Bankruptcy, sec. 440. Here there is not even evidence that the interest of G. Ernest Brown was scheduled as a part of his assets, or that it was ever sold under the bankruptcy proceedings.

The time within which a judgment creditor may enforce his judgment is fixed by statute, and there is, therefore, no room for the application of the doctrine of laches.

4     The petition for rehearing is dismissed, and the order staying the remittur is revoked.